*In re* MARTIN (AFTER REMAND)

Docket Nos. 161299, 161431. Submitted May 7, 1993, at Lansing. Decided May 2, 1994, at 10:15 A.M.

Mary Martin, as guardian of and conservator for her husband, Michael Martin, a legally incapacitated person, petitioned the Allegan County Probate Court for authorization for the withdrawal of life-sustaining medical treatment from Michael, including nutrition. Leeta M. Martin and Patricia Major, Michael's mother and sister, opposed the petition and filed a petition for the removal of Mary as Michael's guardian and conservator. The court, George A. Greig, J., denied both petitions, enjoined Leeta and Patricia from interfering with Michael's medical treatment, and denied Leeta and Patricia's request for attorney fees from Michael's estate in excess of the $20,000 agreed to by the parties. Mary appealed, and Leeta and Patricia appealed. The appeals were consolidated. The Court of Appeals, WAHLS, P.J., and SHEPHERD and CAVANAGH, JJ., reversed and remanded, 200 Mich App 703 (1993). On remand, the trial court found that Michael does not have, nor will he regain, the requisite capacity to make a decision regarding the withholding or withdrawal of life-sustaining medical treatment, that clear and convincing evidence exists demonstrating Michael's previously expressed preference to decline life-sustaining medical treatment under the circumstances presented, that the petitioner is a suitable person to represent Michael with respect to a decision to withdraw life-sustaining medical treatment, and that attorney fees incurred by the respondents in excess of $20,000 may not be charged against Michael's estate. The respondents appealed.

The Court of Appeals *held:*

1. The trial court did not clearly err in finding that Michael does not have and will not regain the requisite decision-making

REFERENCES

Am Jur 2d, Attorneys at Law §§ 237-314; Death §§ 632-707.
Judicial power to order discontinuance of life-sustaining treatment. 48 ALR4th 67.
Living wills: validity, construction, and effect. 49 ALR4th 812.
Tortious maintenance or removal of life supports. 58 ALR4th 222.

capacity to make a decision concerning the withholding or withdrawal of life-sustaining medical treatment, that Michael's brain damage is permanent and his present condition will not improve, that Michael's present situation conforms to the circumstances contemplated by him in his preaccident discussions with the petitioner, that the discussions clearly and convincingly reveal Michael's expressed preference to decline life-sustaining medical treatment under the circumstances presented, and that Michael previously had expressed a medical preference to decline life-sustaining medical treatment under the circumstances presented.

2. The trial court properly denied the respondent's petition to remove Mary Martin as Michael's representative and guardian and held that the petitioner is a suitable person to represent Michael with respect to a decision to withdraw life-sustaining medical treatment.

3. The trial court abused its discretion in denying the respondents' request for additional attorney fees. The matter must be remanded to the trial court for a hearing and decision regarding the value of the respondents' attorney services in light of the factors for determining reasonableness set forth in *Crawley v Schick,* 48 Mich App 728, 737 (1973).

Affirmed in part, reversed in part, and remanded.

1. COURTS — WITHHOLDING OR WITHDRAWAL OF LIFE-SUSTAINING TREATMENT — COMPETENCE OF PATIENT.

The test for determining if a person has the requisite capacity to make a decision concerning the withholding or withdrawal of life-sustaining medical treatment is whether the person has sufficient mind to reasonably understand the condition, is capable of understanding the nature and effect of the treatment choices, is aware of the consequences associated with those choices, and is able to make an informed choice that is voluntary and not coerced; proof that the patient does not have and will not regain the capacity of making the decision must be clear and convincing.

2. COURTS — WITHHOLDING OR WITHDRAWAL OF LIFE-SUSTAINING TREATMENT — COMPETENCE OF PATIENT.

Where a formerly competent patient lacks the requisite capacity to make a decision regarding the withholding or withdrawal of life-sustaining medical treatment, such treatment may be withheld or withdrawn upon proof by clear and convincing evidence of the patient's previously expressed medical preference to decline treatment under the circumstances presented.

3. ATTORNEY AND CLIENT — ATTORNEY FEES.

    The facts to be taken into consideration in determining the
    reasonableness of attorney fees include: the professional stand-
    ing and experience of the attorney; the skill, time, and labor
    involved; the amount in question and the results achieved; the
    difficulty of the case; the expenses incurred; and the nature and
    length of the professional relationship with the client.

*Vlcko, Lane, Payne & Broder, P.C.* (by *Andrew J. Broder* and *Lynn Stevens Naoum*), for Mary Martin.

*Hess & Hess, P.C.* (by *John H. Hess* and *Daniel B. Hess*), for Letta M. Martin and Patricia Major.

AFTER REMAND

Before: WAHLS, P.J., and SHEPHERD and CAV-ANAGH, JJ.

SHEPHERD, J. These consolidated appeals are before this Court for the second time after having been remanded to the Allegan County Probate Court for further proceedings with regard to a variety of matters in connection with both peti-tioner Mary Martin's petition for authority to withdraw her husband Michael Martin's life sup-port and the counterpetition of respondents, Patri-cia Major and Leeta Martin, who are Michael's sister and mother respectively, to remove Mary Martin as Michael's guardian. See *In re Martin,* 200 Mich App 703; 504 NW2d 917 (1993). On October 18, 1993, following several days of further testimony on remand, the trial court issued an order adjudicating the following (1) that Michael does not have, nor will he regain, the requisite capacity to make a decision regarding the with-holding or withdrawal of life-sustaining medical treatment, (2) that clear and convincing evidence exists demonstrating Michael's previously ex-

pressed preference to decline life-sustaining medical treatment under the circumstances presented, (3) that petitioner is a suitable person to represent Michael with respect to a decision to withdraw life-sustaining medical treatment, and (4) that attorney fees incurred by respondents in excess of $20,000 may not be charged against Michael's estate. Respondents now appeal each of these rulings.

As we noted in our original opinion, Michael Martin sustained debilitating injuries in an automobile accident in 1987, with the most serious being a closed head injury resulting in severe subcortical brain damage significantly impairing both his physical and cognitive functioning. Michael's injuries left him totally paralyzed on his left side but with some limited, though mainly nonfunctional, movement of his right limbs. He cannot eat, walk, or talk, and he has no bladder or bowel control. He is dependent on a feeding tube for nutrition and a colostomy for defecation. Although, as noted above, his cognitive abilities were also seriously affected, Michael remains conscious, he has some awareness of his surroundings, and he can communicate to some extent through head nods.

I

In view of the evidence disclosing that Michael has some ability to interact and communicate, we directed the trial court to determine, on remand, whether Michael possesses the requisite decision-making capacity to make a decision regarding the withholding or withdrawal of life-sustaining medical treatment, pursuant to the following four-part test:

The test for determining if a person has the requisite capacity to make a decision concerning the withholding or withdrawal of life-sustaining medical treatment is whether the person (1) has sufficient mind to reasonably understand the condition, (2) is capable of understanding the nature and effect of the treatment choices, (3) is aware of the consequences associated with those choices, and (4) is able to make an informed choice that is voluntary and not coerced. . . . The proof must be clear and convincing that the patient does not have and will not regain the capacity of making the decision. [*Id.* at 715-716.]

On remand, after hearing extensive additional medical testimony concerning Michael's condition and level of functioning, the trial court found that the evidence was clear and convincing that Michael does not have, nor will he regain, sufficient decision-making capacity with respect to a decision to withdraw life-sustaining medical treatment.

The trial court's findings of fact are subject to review under the clearly erroneous standard. *In re Martin, supra* at 715. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *In re Cornet,* 422 Mich 274, 277-278; 373 NW2d 536 (1985).

Here, several medical experts testified at the proceedings on remand concerning Michael's cognitive abilities. According to Dr. William Vandenberg, a physical medicine and rehabilitation specialist who works extensively with head-injured patients, Michael can understand only very short and very simple questions and cannot accurately comprehend questions that are lengthy, verbose, or that require the retention of multiple thoughts. Similar testimony was provided by Dr. Donald

Rutherford, who is the medical director at the Glenwood Christian Nursing Home where Michael resides. Dr. Robert Kreitsch, who was one of respondents' main experts, likewise described Michael's levels of cognition and comprehension as being limited to "very, very simple terms" and "some simple short phrases." According to Dr. Kreitsch, given Michael's memory deficiencies and inability to retain information, Michael is incapable of processing the necessary information to fully understand his condition. Drs. Vandenberg, Rutherford, and Kreitsch uniformly agreed that Michael does not possess the requisite capacity to satisfy the four-part test for evaluating decision-making capacity.

This same conclusion was also reached by Dr. Ronald Cranford, a neurologist, whose testimony was accorded significant weight by the trial court. Dr. Cranford provided detailed testimony describing not only Michael's condition and level of functioning from a medical standpoint, but also the process involved in assessing Michael's cognitive capabilities during a recent evaluation. Dr. Cranford's evaluation demonstrated that, consistent with the testimony of the other medical experts, Michael possesses an ability to understand some simple questions concerning basic and familiar items, although even then his responses are not always consistent, but that he lacks an understanding of more complex items, including his physical capabilities and medical condition.

Although one of respondents' experts, Dr. Walter Zetusky, a neuropsychologist, testified that he evaluated Michael in 1990 and determined that he had an intelligence quotient of sixty-three, thus placing him at a higher level of cognitive functioning than that described by the other medical experts, the trial court accorded little probative

value to the IQ testing. Significantly, the trial court noted that other medical experts questioned the validity of any IQ testing of Michael, and, further, that another expert, Dr. David Winstrom, in fact attempted to perform similar testing on Michael in April 1993, but was unable to do so, given Michael's inability to respond at a sufficient level to permit testing. More importantly, the trial court observed that not even Dr. Zetusky was able to provide unqualified testimony indicating that Michael has sufficient capacity to satisfy the four-part test for evaluating decision-making capacity.

Finally, it was the general consensus among the medical experts that Michael's condition and cognitive level of functioning will not improve in the future.

In view of the foregoing evidence, we find that the trial court did not clearly err in finding that Michael does not have and will not regain the requisite decision-making capacity to make a decision concerning the withholding or withdrawal of life-sustaining medical treatment.

II

The next issue before us involves the matter of Michael's previously expressed medical preferences.

In our earlier decision, we stated:

> [W]here a formerly competent patient lacks the requisite capacity to make a decision regarding the withholding or withdrawal of life-sustaining medical treatment, such treatment may be withheld or withdrawn upon proof by clear and convincing evidence of the patient's previously expressed medical preference to decline treatment under the circumstances presented. [*In re Martin, supra* at 711.]

We directed the trial court to provide, on remand, new findings of fact and conclusions of law in connection with the issue of Michael's previously expressed medical preferences, given the inadequacy of the trial court's original findings with regard to this issue and our conclusion that the trial court had erred in holding that a person's medical preferences could not be considered unless they were expressed in writing. *Id.* at 713-714, 717-718. Respondents now challenge the trial court's determination, on remand, that clear and convincing evidence had been presented demonstrating Michael's previously expressed preference to decline life-sustaining medical treatment under the circumstances presented.

Testimony was received from respondent Major as well as two of Michael's former co-workers describing statements made by Michael before his accident wherein he expressed a preference not to be maintained in a coma or in a vegetative state. The trial court found, and we agree, that Michael's present circumstances do not conform to those described by Michael when making those prior statements. However, testimony was also received from petitioner, who described numerous statements that were made to her by Michael before his accident, on different occasions and in different settings and contexts, all expressing a preference not to be maintained under various described circumstances. According to petitioner, Michael was adamant and made it very clear that he did not want to be kept alive in the circumstances described. The trial court found that the statements were sufficient in detail to establish Michael's previously expressed preference to decline life-sustaining medical treatment under the present circumstances. We agree.

Prevalent throughout Michael's statements is

the preference not to be maintained in a condition where he was incapable of performing basic functions such as walking, talking, dressing, bathing, or eating, and, instead, was dependent upon others or machines for his basic needs. This is exactly the condition in which Michael now finds himself. The evidence clearly and convincingly establishes that Michael suffers from severe brain damage and cannot eat, walk, talk, bathe, or dress himself, nor can he control his bladder or bowels. Moreover, he is permanently paralyzed on his left side and has only very limited movement of his right side. As noted previously, his cognitive functioning is severely impaired, with his ability to understand and comprehend spoken language limited to a very simple and basic level. As a result of his physical and cognitive limitations, Michael is totally dependent upon others for all his basic needs.

Michael's discussions also reveal an express preference not to be maintained by machines in order to be kept alive. Presently, Michael requires a feeding tube inserted through his stomach as his source of nutrition and hydration and a colostomy to remove his waste. Although Michael did not refer specifically to these procedures in his prior statements, he did specifically describe circumstances in which he would be unable to feed himself or in which he would be required to wear diapers to continue living, both of which are applicable to his present situation.

One of the limitations expressed by Michael in his preaccident discussions was that there be no hope of getting better or improving. Here, the evidence is clear and convincing that Michael's brain damage is permanent and that his present condition will not improve.

Also, Michael's statements are not limited to the expression of a mere preference not to live in the

circumstances described; rather, they specifically contain stated preferences not to be maintained and not to be kept alive under such circumstances. Moreover, the fact that Michael's preferences were expressed repeatedly, adamantly, and in different contexts, together with the evidence showing that he had similar discussions with others, indicate that Michael was firm and settled in his desire to have life-sustaining medical treatment withheld or withdrawn in the circumstances described.

For the foregoing reasons, we agree that Michael's present situation conforms to the circumstances contemplated by him in his preaccident discussions with petitioner, and that the discussions clearly and convincingly reveal his expressed preference to decline life-sustaining medical treatment under the circumstances presented.

Nevertheless, respondents assert that petitioner lacked credibility as a witness and, therefore, the trial court erred in according weight to her testimony. In applying the clearly erroneous standard, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989). In this case, the trial court specifically addressed the issue of credibility in its findings and found that petitioner was "credible, if not the most credible witness the court has heard throughout these proceedings." After thoroughly examining the record, we find no basis upon which to disagree with the trial court's assessment of credibility. Indeed, we observe that even respondent Major testified that she had no reason to believe that Michael didn't have the discussions described by petitioner.

Accordingly, we find that the trial court did not clearly err in finding that Michael had previously expressed a medical preference to decline life-sus-

taining medical treatment under the circumstances presented.

## III

The next issue before us concerns the matter of respondents' petition to remove Mary Martin as Michael's representative and guardian. In our original decision, we stated that the trial court had erred when it denied respondents' petition for removal of Mary Martin as Michael's guardian without having held a hearing for the purpose of inquiring into her suitability to represent Michael. *In re Martin, supra* at 718-719. We also found that the trial court had erred in summarily excluding evidence concerning issues of possible bias, prejudice, conflict of interest, or improper motive on the part of petitioner. *Id.* On remand, after hearing evidence concerning petitioner's performance and suitability as guardian, as well as evidence tending to show the existence of possible bias, prejudice, conflict of interest, or improper motive on petitioner's part, the trial court found that petitioner has been and continues to be a suitable person to act as Michael's guardian and to represent him with respect to a decision to withdraw life-sustaining medical treatment.[1] We agree.

First, we observe that Drs. Rutherford, Vandenberg, and Cranford all testified that Michael has received an appropriate course of medical care and treatment. We also observe that several physicians and other medical personnel, as well as an insur-

[1] In our earlier decision we stated that any "properly preserved" request for a jury determination of factual disputes in connection with respondents' petition for removal was to be resolved in accordance with MCL 600.857(1); MSA 27A.857(1). *In re Martin, supra* at 719-720. On remand, the trial court denied respondents' request for a jury determination of disputed factual issues, finding that their request had not been "properly preserved" under MCR 5.508. Respondents have not challenged this ruling.

ance claims specialist who has dealt with petitioner frequently over the years, testified that petitioner has always appeared interested and supportive of Michael's care and has tried to see to it that he receives the best possible care. Although respondents are critical of petitioner's failure to provide recreational therapy, Dr. Cranford testified that such therapy would not be of any benefit to Michael, given his reduced level of functioning. Other medical personnel likewise questioned the benefit of such therapy.

We reject respondents' contention that petitioner is not a suitable person to represent Michael because of factors such as financial considerations or her relationships with others. These matters were fully explored during the proceedings on remand and the trial court found no evidence indicating that petitioner either has been improperly influenced or that her performance as guardian has otherwise been compromised by such factors. Again, we find no basis in the record upon which to disagree with this finding.

Respondents also argue that a number of isolated incidents reveal that petitioner has not always acted with Michael's best interests in mind. However, the trial court found that petitioner had not acted improperly, and, in any event, that the incidents complained of were nothing more than "smoke screens" occasioned by respondents' disagreement with petitioner over the issue of withdrawal of life support. Having reviewed the record, we cannot say that the trial court erred in these findings. Indeed, we observe that respondent Martin admitted she would not be seeking to remove petitioner as Michael's guardian if it were not for the petition to withdraw life-sustaining medical treatment, and that respondent Major likewise testified that her "main complaint" with petitioner

was the fact that she had filed a petition to withdraw Michael's life support.

Accordingly, we find no error in the trial court's decision both denying respondents' petition to remove petitioner as Michael's guardian and holding that petitioner is a suitable person to represent Michael with respect to a decision to withdraw life-sustaining medical treatment.

IV

Finally, respondents argue that the trial court abused its discretion in denying their request for attorney fees in excess of $20,000. We agree.

In the original appeal in this matter, the question was raised whether reasonable attorney fees incurred by respondents could be charged against Michael's estate. Citing *Becht v Miller,* 279 Mich 629, 638; 273 NW 294 (1937), and *In re Valentino Estate,* 128 Mich App 87, 96; 339 NW2d 698 (1983), we observed that attorney fees incurred by a nonfiduciary in a probate court proceeding may be charged against the estate of a ward where the ward's estate is benefited and that such a rule was applicable in the case at hand. *In re Martin, supra* at 722. Accordingly, we held that reasonable attorney fees incurred by respondents could be charged against Michael's estate and we remanded for a hearing with regard to the question of reasonableness. *Id.* at 722-723.

On remand, respondents submitted an itemized statement of attorney services reflecting actual attorney fees incurred in the amount of $135,192.17. Respondents requested that they be awarded this amount from Michael's estate, less $20,000 that had already been paid pursuant to an

earlier agreement.[2] However, the trial court denied respondents' request for additional attorney fees, reasoning that their participation in the proceedings failed to produce any "additional benefit to the estate."

A probate court has broad discretion in determining what amount constitutes reasonable compensation for attorney services. *In re Krueger Estate,* 176 Mich App 241, 248; 438 NW2d 898 (1989). In making this determination, the court should adhere to the guidelines for determining "reasonableness" set forth in *Crawley v Schick,* 48 Mich App 728, 737; 211 NW2d 217 (1973). See *In re L'Esperance Estate,* 131 Mich App 496, 501; 346 NW2d 578 (1984). The Court in *Crawley* stated at 737:

> There is no precise formula for computing the reasonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

Although the actual amount of attorney fees requested may be considered, it is not controlling in itself and an award of reasonable attorney fees is not confined to that amount. *In re Bender's Estate,* 246 Mich 405, 408; 224 NW 381 (1929); *In re O'Neill Estate,* 168 Mich App 540, 542-543; 425 NW2d 133 (1988). See also *Petterman v Haverhill*

---

[2] As we explained in our original decision, petitioner had previously agreed to pay attorney fees incurred by respondents up to $20,000. The issue in dispute was whether respondents were entitled to recover an additional amount. *In re Martin, supra* at 721.

*Farms, Inc,* 125 Mich App 30, 33; 335 NW2d 710 (1983). The burden of proof with regard to the question of reasonableness rests on the party claiming a right to compensation. *In re Krueger Estate, supra* at 249.

In this case, we find that the trial court abused its discretion in denying respondents' request for additional attorney fees. In reaching its decision, the trial court failed to consider the various reasonableness factors and also declined to hear petitioner's specific objections to the reasonableness of respondents' requested attorney fees. Instead, the trial court decided that respondents were not entitled to attorney fees in the first instance. However, we had already ruled that respondents were entitled to recover reasonable attorney fees from Michael's estate. *In re Martin, supra* at 723. The only question that remained to be decided was the reasonable value of the attorney services incurred.

It appears that the trial court felt that attorney fees were not warranted because, in its opinion, Michael did not benefit from respondents' participation in these proceedings since respondents did not prevail in their efforts to foreclose the possibility of withholding or withdrawing Michael's life-sustaining medical treatment or to remove petitioner from representing Michael with regard to such a decision. We disagree.

As we noted in our original opinion, conflicting evidence existed regarding Michael's condition, level of functioning, and previously expressed medical preferences. Additionally, at the time these proceedings commenced, the law in Michigan was unsettled with regard to the legal standards that govern a decision to withhold or withdraw life-sustaining medical treatment. Indeed, even the trial court was of the initial opinion that, consistent with respondents' position, the law did not

permit the withholding or withdrawal of life-sustaining medical treatment under the circumstances of this case. See *In re Martin, supra* at 712-713. Accordingly, as we explained in our original opinion:

> Under the circumstances, we believe that Michael can be said to derive a benefit from a proceeding designed to ensure that his present capacity to decide his own medical treatment is fully explored and, in the event it is determined that he lacks the requisite decision-making capacity, that his medical treatment preferences or best interests are likewise fully and adequately considered and protected. This is particularly so where an erroneous determination will result in the termination of Michael's life against his wishes or best interests. We believe, therefore, that the rationale of *Becht* [*supra*] and *In re Valentino* [*supra,*] is applicable to the case at hand and allows Michael's estate to be charged with reasonable attorney fees incurred by respondents in their efforts to ensure that Michael's condition, intentions, and best interests are fully considered and protected. [*Id.* at 722.]

Thus, while respondents themselves may not have prevailed, Michael still derived a benefit from their participation in these proceedings.

Respondents assert that the information contained in their itemized list of attorney services is sufficient to enable this Court to decide the issue of reasonable attorney fees. We disagree. Given the trial court's ruling, a hearing was not conducted with regard to the question of reasonableness, nor was petitioner permitted to make a record of her specific objections. Consequently, the record is insufficient to enable this Court to properly review this issue.

Accordingly, we remand this matter to the trial court and direct it to conduct a hearing and decide

the reasonable value of respondents' attorney services in light of the various reasonableness factors. We will again retain jurisdiction to review the propriety of the trial court's decision regarding this issue.

V

In sum, for the reasons stated above, we find no error in the trial court's determination that withdrawal of Michael Martin's life-sustaining medical treatment is legally proper in this case and that petitioner is a suitable person to represent Michael with respect to such a procedure. Although we are remanding for further proceedings with respect to the matter of attorney fees, because the matter of withdrawal of life support is separate and independent from the matter of attorney fees, proceedings designed to effectuate the withdrawal of life-sustaining medical treatment should not be delayed pending litigation of the attorney fees matter.

Affirmed in part, reversed in part, and remanded for proceedings in accordance with this opinion. We retain jurisdiction with regard to the attorney fees issue only.