*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* CHANDU MANSHARAMANI LIVING TRUST.

| | |
|---|---|
| RITA MANSHARAMANI and KARUNA MANSHARAMANI, | UNPUBLISHED<br>October 20, 2022 |
| Appellants, | |
| v | No. 356780<br>Macomb Probate Court |
| HEIDI C. AULL, Co-Trustee of the CHANDU MANSHARAMANI LIVING TRUST, GEORGE HEITMANIS, Trustee of the CHANDU MANSHARAMANI IRREVOCABLE TRUST FOR THE BENEFIT OF RITA MANSHARAMANI and the CHANDU MANSHARAMANI IRREVOCABLE TRUST FOR THE BENEFIT OF KARUNA MANSHARAMANI, MARVIE NEUBAUER, GEORGE CONSTANCE, and SIDNEY BORDERS, | LC No. 2018-228136-TV |
| Appellees, | |
| and | |
| SAVITRI BHAMA, M.D., Co-Trustee of the CHANDU MANSHARAMANI LIVING TRUST, HIRO MANSHARAMANI, SITU SHIVDASANI, and NEIL MANSHARAMANI, | |
| Other Parties. | |

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

-1-

Appellants, Rita Mansharamani (Rita) and Karuna Mansharamani (Karuna),[1] appeal as of right the probate court's order denying their petition to terminate the Chandu Mansharamani Living Trust (the Living Trust) and appellants' related Special-Needs Trusts. We affirm.

## I. BACKGROUND

This case arises from the July 2013 death of Chandu Mansharamani (Chandu) and the trust provisions that took effect at the time of his death.[2] Rita is Chandu's daughter. Karuna is Chandu's ex-wife and Rita's mother. In 2008, Chandu executed the Chandu Mansharamani Living Trust (the Living Trust)—a revocable living trust. Appellants are two of several beneficiaries of the Living Trust. Upon Chandu's death, his sister, Dr. Savitri Bhama, became the initial trustee. Hiro Mansharamani, Situ Shivdasani, and Neil Mansharamani are other relatives and trust beneficiaries.

In 2018, the probate court administered the Living Trust in Macomb Probate Court Case No. 2018-228136-TV (the Living Trust Matter). Later that year, the probate court appointed appellee Heidi Aull, an attorney, as a successor cotrustee of the Living Trust. Dr. Bhama continued to serve as the other cotrustee. Appellee Marvie Neubauer (of Shea Aiello, PLLC) is Dr. Bhama's

---

[1] We acknowledge appellants' position as pro se litigants, as well as the leniency such litigants are afforded in pursuing their claims. See *Haines v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972) (observing that allegations in a pro se complaint are held "to less stringent standards than formal pleadings drafted by lawyers"). This leniency is, however, not without its limits, and pro se litigants are typically held to the same briefing standards as an attorney. See *Baird v Baird*, 368 Mich 536, 539; 118 NW2d 427 (1962); *Totman v Sch Dist of Royal Oak*, 135 Mich App 121, 126; 352 NW2d 364 (1984). Appellants' brief on appeal is muddled. Reading the brief in the most generous light possible, it appears that appellants raise two overarching issues: (1) whether the trial court abused its discretion by denying their petition to terminate the trusts at issue; and (2) whether the trial court erred by awarding appellees trustee and attorney fees.

[2] In *In re Estate of Mansharamani*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2017 (Docket Nos. 338045 and 338413), pp 1-2, appellants challenged an order denying their petition to remove Chandu's sister, Dr. Savitri Bhama, as personal representative and filed a complaint for superintending control in the underlying case, Macomb Probate Court Case No. 2014-214598-DE, which this Court construed as an application for leave to appeal. This Court affirmed the probate court's order denying appellants' petition to remove Dr. Bhama as personal representative, noting that appellants had failed to present evidence supporting their claims on appeal. *Id*. at 4-6. This Court also concluded that appellants' allegations regarding Sidney Borders, Dr. Bhama's attorney at the time, were not properly before the Court and should have been submitted to either the police or a prosecutor, or to the Attorney Grievance Commission. *Id*. at 6.

most recent attorney. Appellee Sidney Borders was Dr. Bhama's prior attorney, and appellee George Constance served as appellants' court-appointed guardian ad litem.[3]

In April 2019, the probate court ordered the distribution of the assets of the Living Trust. The probate court awarded trustee fees to Aull, and approved Neubauer's and Borders's attorney fees. In late April 2019, after the court ordered distribution of the Living Trust, Aull learned of the existence of a previously unidentified trust asset: an Ameritrade account containing $57,947.51. In June 2019, Aull petitioned the court to distribute the funds from the Ameritrade account and close the Living Trust. At the hearing on the petition in mid-July 2019, Aull indicated that she did not know why Borders did not disclose the Ameritrade account earlier. The probate court ordered distribution of the Ameritrade account, which included eventual distribution of assets to appellants' Special-Needs Trusts. It also sanctioned Borders in the amount of $5,000 for failing to disclose the Ameritrade account, and closed the Living Trust case.

Because appellants were receiving federal benefits,[4] the probate court opened two separate matters, Macomb Probate Court Case Nos. 2019-231473-PO (Rita) and 2019-231474-PO (Karuna), and entered protective orders to establish special-needs trusts on their behalf. To prevent the government from recapturing the funds, the special-needs trust would receive appellants' share of the Living Trust. Aull, on behalf of the Living Trust, executed The Chandu Mansharamani Irrevocable Trust for the Benefit of Rita Mansharamani (Rita's Special-Needs Trust) and the Chandu Mansharamani Irrevocable Trust for the Benefit of Karuna Mansharamani (Karuna's Special-Needs Trust) on September 10, 2019. Appellants' shares of the Living Trust were distributed into their Special-Needs Trusts. The court appointed appellee George Heitmanis, who served as Rita's conservator at the time, the trustee of both Special-Needs Trusts.

After Aull executed the Special-Needs Trusts, appellants began filing petitions in the Living Trust matter seeking to close the Special-Needs Trusts and gain direct access to their shares of the Living Trust. Although their petitions are difficult to understand, appellants mainly argued that they did not need a trustee to handle their financial affairs, and Heitmanis failed to communicate effectively with them. The probate court denied each petition.

In their most recent petition, which forms the basis of this appeal, appellants indicated that they planned to move to India, and suggested that Dr. Bhama could handle their financial affairs.

---

[3] The record is not well developed regarding why the trial court appointed Constance as appellants' guardian ad litem. Regardless, resolution of that issue is not necessary to address the questions presented on appeal.

[4] The record is not clear on the exact nature of the benefits received by appellants. Both Special-Needs Trusts express a belief that neither appellant was receiving "any medical, food, or other governmental benefits from any federal, state or local source except possibly for social security benefits." Appellants' petition to close the trusts, filed in mid-December 2019, asserted that Rita received Social Security Disability Income but had not had Medicaid for the "last few years." The petition also appears to suggest that Karuna still received Social Security Income benefits and Medicaid. There is no other documentation in the record regarding the exact nature of the benefits received by appellants.

Heitmanis responded that he was searching for a successor trustee to assume his responsibilities, but had not yet found anyone to serve in the role. The court heard the petition in mid-March 2021. During the hearing, Rita explained that appellants had no "definite plans" to move to India, but reiterated that Heitmanis withheld funds from appellants. The court explained:

> I know that's the request, but I'm denying that request. It's your money and it's your mom's money, and it's in trust being kept safe to be used for your benefit. If you have a request to use those monies you can send it to Mr. Heitmanis at any time and he'll tell you yes or no, whether it can happen. And you can make a plan to return to India, but we're going to have to wait until Covid gets under control. But you can send Mr. Heitmanis an email when you're ready.

The court denied the petition, explaining that if appellants required a distribution from the Special-Needs Trusts, they could contact Heitmanis using the e-mail address listed in the corresponding order. This appeal followed.

## II. LAW AND ANALYSIS

### A. THE PROBATE COURT DID NOT ERR BY DENYING APPELLANTS' MOTION TO DISSOLVE THE SPECIAL-NEEDS TRUSTS

Appellants first appear to argue that the probate court abused its discretion by denying their petition to terminate "each and all trusts" in the context of the Living Trust matter.[5] We disagree.

### 1. STANDARDS OF REVIEW

We review a probate court's dispositional decision for an abuse of discretion. *In re Estate of Huntington*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 354006); slip op at 5; *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *In re Huntington Estate*, ___ Mich App at ___; slip op at 5 (citation and quotation marks omitted). An error of law constitutes an abuse of discretion. *Id*. at ___; slip op at 5. Issues of statutory interpretation are reviewed de novo on appeal. *Id*. at ___; slip op at 4. When examining a statutory provision, we look first to the plain language of the statute. *Id*. at ___; slip op at 4. When the plain and ordinary language of the statute is clear and unambiguous, we apply the statute as written. *Id*. at ___; slip op at 4. Finally, we review the probate court's findings of fact (if any) for clear error. *Id*. at ___; slip op at 4.

---

[5] By failing to address the merits of their assertions of error, appellants have arguably abandoned their arguments on appeal, *Airgas Specialty Prod v Mich Occupational Safety & Health Admin*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 351105); slip op at 17, and we need not search for authority to sustain or reject their position, *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). Nevertheless, we are mindful of appellants' status as pro se litigants, which affords them some leniency. See *Haines*, 404 US at 520. We, therefore, address the issues as we discern them.

## 2. BACKGROUND ON SPECIAL-NEEDS TRUSTS AND A COURT'S AUTHORITY TO ESTABLISH AND DISSOLVE TRUSTS

The probate court did not abuse its discretion by denying appellants' petition to close all of the trusts. We first note that the probate court ordered distribution of the Living Trust's assets and closure of the Living Trust matter upon distribution of the assets. Thus, once the assets were distributed, there was no further action to be taken in relation to the Living Trust. For this reason, the main thrust of appellants' argument relates to their Special-Needs Trusts.

Special needs trusts are typically established for the benefit of an individual with disabilities who is receiving some form of government of assistance. Such trusts allow a disabled beneficiary to receive assets without disqualifying the beneficiary for government assistance, such as Medicaid or Social Security benefits. See *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 281; 931 NW2d 571 (2019), citing 42 USC 1396p(d)(4)(A) through (C) (MCCORMACK, C.J., concurring).

The Michigan Trust Code (MTC), MCL 700.7101 *et seq.*, which is incorporated within the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, governs the conditions under which a trust may be terminated. The circumstances for terminating a trust are outlined in MCL 700.7410 through MCL 700.7414. The MTC outlines several statutory grounds for termination of a trust. See, e.g., MCL 700.7410(1) (providing that the court may terminate the trust if the purpose of the trust no longer exists or becomes impossible to achieve); MCL 700.7411 (providing bases and processes for modification or termination of a noncharitable irrevocable trust); MCL 700.7412 (modification or termination of trust based on changed circumstances, impracticality, or termination in furtherance of settlor's stated purpose or probable intention); MCL 700.7413 (termination of charitable trusts); MCL 700.7414 (termination based on insufficient value to justify costs of trust administration).

Appellants did not provide the probate court (or this Court) with the statutory basis that they believe mandates terminating the Special-Needs Trusts. The probate court's order denying the petition to terminate the trusts also does not identify the statutory basis it considered. Here, the most plausible statutory grounds for terminating the Special-Needs Trusts is MCL 700.7412(2). See *In re Special Needs Trust for Moss*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357836); slip op at 4 n 2. Recently, when confronted with a similar issue, this Court analyzed a probate court decision to terminate a special-needs trust under the framework of MCL 700.7412(2). See *id.* (concluding that "the probate court plainly (and correctly) chose MCL 700.7412(2) as the best and most logical path to termination of the trust.") Without clarity from appellants or the probate court on the statutory grounds at issue, we analyze this issue within the framework of MCL 700.7412(2).[6]

MCL 700.7412 governs modification or termination of a trust because of unanticipated circumstances or an inability to administer the trust. MCL 700.7412. MCL 700.7412(2) applies

---

[6] After review of the other circumstances in which a trust may be terminated, we are convinced that none of those provisions provide relief to appellants.

equally to revocable and irrevocable trusts, and provides, "The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the settlor's stated purpose or, if there is no stated purpose, the settlor's probable intention." *Id.*

### 3. THE PROBATE COURT DID NOT ABUSE ITS DISCRETION IN DECIDING NOT TO DISSOLVE THE SPECIAL-NEEDS TRUST

Appellants have failed to persuade this Court that the probate court abused its discretion in deciding not to terminate their Special-Needs Trusts under MCL 700.7412(2) (or any other MTC provision). When interpreting whether the probate court abused its discretion in relation to the termination of a trust, we examine the purpose and intent of the trust. *In re Special Needs Trust for Moss*, ___ Mich App at ___; slip op at 3. "The intent of the settlor is to be carried out as nearly as possible." *Id*. at ___; slip op at 3 (quotation marks and citation omitted). The intent should be determined from the trust document, unless the trust language is ambiguous. *Id*. at ___; slip op at 3. The language of the Special-Needs Trusts is clear that the Trusts were intended to serve as discretionary, supplemental sources of personal funds while ensuring that appellants continued to qualify for federal benefits. Rita's Special-Needs Trust also stated that she was a legally incapacitated individual, whereas Karuna's Special-Needs Trust designated her as a disabled person under state and federal law.

Appellants' petition to terminate the Trusts asserted that neither appellant had a court order for health treatment, and both could handle their own finances. But appellants did not provide the probate court with any evidence that their disability benefits had ended, or that they were able to handle their own financial affairs. At the time of the hearing, both appellants were protected by a medical guardianship and were receiving federal benefits. So, the intent of the Special-Needs Trusts continued to exist.

Appellants indicated they wanted to purchase a home in India with the funds in their Special-Needs Trusts. But, they had no concrete plans to move to India. The court informed appellants that Heitmanis would help them move to India, if that became their proximate goal. As far as appellants' claim that Heitmanis was not responsive to their requests for distributions, the probate court encouraged appellants to contact Heitmanis with any requests for funds. Heitmanis expressed a willingness to work with appellants to fulfill their requests. We conclude, therefore, that the probate court adequately addressed appellants' concerns regarding their communication with Heitmanis.

Finally, we note that appellants' unsubstantiated allegations in the probate court and in this Court that appellees engaged in "extreme body touching torture" and had "spy terminals" sending "dangerous signals" appear to underscore the need for the Special-Needs Trusts. They have also raised unsubstantiated claims that Karuna experienced "breast damage" and "menses stop" because of appellees' alleged misconduct. Under the circumstances, we conclude that the probate court properly exercised its discretion by denying appellants' petition to terminate the Trusts.

B.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN AWARDING TRUSTEE
AND ATTORNEY FEES

Appellants also appear to argue that the probate court abused its discretion by awarding trustee and attorney fees because appellees acted unethically and overcharged the Trusts.[7]  We disagree.

The probate court's decision whether to permit trustee fees will not be overturned on appeal unless the decision constituted an abuse of discretion.  *In re Eddy Estate*, 354 Mich 334, 347-348; 92 NW2d 458 (1958), supplemented on other grounds 356 Mich 120 (1959) (citation omitted).  We also review a probate court's decisions regarding whether to award attorney fees and the reasonableness of the fees for an abuse of discretion.  *Ayotte v Dep't of Health & Human Servs*, 337 Mich App 29, 38; 972 NW2d 282 (2021).

In general, if the terms of the trust do not specify the trustee's compensation, the trustee is entitled to reasonable compensation under the circumstances.  See MCL 700.7708(1).  If the trust specifies the amount of the compensation, the trustee is entitled to compensation as specified in the trust, but the court may alter the compensation if the trustee's duties substantially differ from those contemplated by the settlor, or the compensation is unreasonable.  See MCL 700.7708(2).

Regarding attorney fees, in Michigan, attorney fees are recoverable only if authorized by statute, court rule, or contract.  *In re Temple Marital Trust*, 278 Mich App 122, 129; 748 NW2d 265 (2008).  MCL 700.7904(1) provides that "[i]n a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding."  The court may only award reasonable fees, not actual fees.  *Smith v Khouri*, 481 Mich 519, 528 n 12; 751 NW2d 472 (2008).[8]  If an interested party challenges a fee request, the court should conduct an evidentiary hearing.  *Miller v Meijer, Inc*, 219 Mich App 476, 479; 556 NW2d 890 (1996).  The trial court may consider the amount of fees requested, but the amount should not control the court's decision.  *In re Martine (After Remand)*, 205 Mich App 96, 109; 517 NW2d 749 (1994), rev'd on other grounds 450 Mich 204 (1995).  The trial court should consider among other factors the professional standing and experience of the attorney, the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal service properly, and the expenses incurred.  *Smith*, 481 Mich at 528-529 (holding that the trial court should "consider the totality of special circumstances," applying as appropriate the overlapping factors listed in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573,

---

[7] As with their argument regarding the Special-Needs Trusts, appellants have abandoned this issue by failing to adequately brief it.  See *Airgas Specialty Prod*, ___ Mich App at ___; slip op at 17; *Cheesman*, 311 Mich App at 161.  Nevertheless, we address the issue.

[8] *Smith* addressed the method for determining a "reasonable attorney fee" under the case evaluation rule, MCR 2.403(O)(6).  Although the relevant statute here has a different purpose than MCR 2.403(O)(6), the Supreme Court's analysis in *Smith* demonstrates how a court should determine the reasonableness of requested attorney fees.

588; 321 NW2d 653 (1982), and the factors in MRPC 1.5(a)). The burden of proof rests on the party requesting attorney fees. *Id.*

Appellants' argument regarding the attorney and trustee fees is difficult to follow. Read in the most generous light possible, appellants' brief appears to challenge the probate court's decision to award certain appellees their requested fees because these appellees did not actually earn their fees and engaged in misconduct. Essentially, they dispute the entitlement to any fees, rather than challenging a specific fee award. By way of example, appellants argue that Aull engaged in "crimes misconduct" and violated their rights as women. Appellants further argue that Aull failed to disclose the amount of her retainer. They also suggest that Neubauer failed to provide them with the total for her services and that she performed no work in the matter. Finally, appellants argue more broadly that they did not approve the trustee or attorney fees.

The probate court properly exercised its discretion by granting attorney and trustee fees. The Living Trust provided that the trustee is "entitled to fair and reasonable compensation" for their services. The amount of the fee was "an amount equal to the customary and prevailing charges for services of a similar nature during the same period of time and in the same geographic locale." The Living Trust granted the trustee the authority to compensate reasonably any attorneys hired by the Trust. The Special-Needs Trusts also permitted the trustee the discretion to employ and compensate attorneys assisting the trustee.

At the time of the hearing on appellants' petition to terminate the Trusts, Heitmanis had not requested any trustee fees. Constance also did not receive fees in the context of the Living Trust matter. There is, therefore, no award for this Court's review in relation to these appellees. The probate court awarded Borders attorney fees, but later sanctioned Borders for failing to disclose the Ameritrade account owned by the Living Trust at the appropriate time in the Living Trust matter. We, therefore, conclude that the court appropriately addressed the issue appellants raise to the extent it relates to Borders's delayed disclosure and the impact on his compensation. Regarding Aull and Neubauer, appellants contend that Aull and Neubauer did not earn their fees. But, they raise no specific challenge to the amount of the fees, the time Neubauer and Aull spent on the case, or either attorney's skillset. We are, therefore, unpersuaded by appellants' argument that the fee awards were unreasonable. Their argument, as we discern it, is that Aull and Neubauer should not receive attorney fees at all, not that the amount they received is unreasonable. Accordingly, the trial court did not abuse its discretion by awarding trustee and attorney fees.[9]

## C. APPELLANTS SHOULD HAVE RAISED ANY ISSUES REGARDING AULL IN THE FIRST APPEAL RELATED TO THE LIVING TRUST

In their brief on appeal, appellants refer to two Living Trust documents. Specifically, they reference a "[s]econd version" that "had business assets in writing but no fund details." They

---

[9] We acknowledge the issue in appellants' statement of questions presented regarding checks written to other attorneys named Elias Kafantaris and Robert Refior. We could not locate any information regarding these alleged checks in the probate court file, and the record is not well developed regarding Kafantris and Refior and their relationship, if any, to this case.

asserted that "[b]oth were suspicious documents . . . ." To the extent appellants challenge Aull's handling of matters related to the Living Trust, those arguments are not properly before this Court. The only remaining issues in this case relate to appellants' Special-Needs Trusts and whether the trial court should have terminated those trusts. Any challenge appellants may have had to Aull's conduct in the Living Trust Matter should have been addressed in the context of that case, which was closed in October 2019, or in the appeal that followed, see *In re Estate of Mansharamani*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2017 (Docket Nos. 338045 and 338413). Because the issue is not properly before this Court, we decline to address it.

D. ATTORNEY GRIEVANCE ISSUES ARE NOT PROPERLY BEFORE THIS COURT

Finally, appellants argue, more generally, that appellees (and other nonparty attorneys) engaged in misconduct in relation to the Living Trust Matter. They use most of their brief on appeal to revisit the complaints they filed against appellees in the Attorney Grievance Commission (AGC) and with the Consumer Protection Division of the Attorney General's office. The AGC is the appropriate forum to investigate appellants' allegations of misconduct under the Michigan Rules of Professional Conduct, see MCR 9.108(A), and we decline to address the merits of appellants' allegations in this matter. Regardless, appellants do not provide any factual support for their allegations of misconduct. To the extent that this issue has any bearing on the issue of attorney fees and trustee fees, we conclude that the probate court did not abuse its discretion by awarding certain appellees their attorney and trustee fees.

Affirmed.


/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood