*In re* LUNDY ESTATE

Docket No. 292930. Submitted December 14, 2010, at Detroit. Decided January 20, 2011, at 9:05 a.m.

As personal representative of the estate of David G. Lundy, deceased, Bridget A. Lundy petitioned the Lenawee Probate Court for the return of estate funds, specifically a certificate of deposit account that First Federal Bank of the Midwest had liquidated after Bridget Lundy applied for informal probate. The bank claimed a priority interest under an assignment granting it a security interest in the funds, which it had perfected. The court, Frederick L. Wood, J., held that because probate proceedings had commenced, the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, rather than article 9 of the Uniform Commercial Code (UCC), MCL 440.9101 *et seq.*, applied and that Lundy's claim for homestead and family allowances had priority over the bank's claim. Respondent appealed.

The Court of Appeals *held*:

The decedent and the bank entered into a transaction and created a security interest in the account. Article 9 of the UCC governs security interests. MCL 700.3104 precludes all proceedings to enforce a claim against an estate before the appointment of a personal representative except a proceeding brought by a secured creditor of the decedent to enforce the creditor's right to the creditor's security. Those claims are governed by the provisions of part 8 of article III and part 6 of article VII of EPIC. MCL 700.3809 governs the obligations of the personal representative in paying the claims of secured creditors, and no provision requires a secured creditor that is otherwise entitled to exhaust a security to first bring a claim against the estate in order to be permitted to exhaust the security. Because the bank had perfected a security interest in the funds, it was not required to bring a claim against the estate but was entitled to exhaust the security in order to reduce the principal amount of the loan upon default, even though there will be insufficient funds in the estate to pay the priority claims and allowances set forth in MCL 700.3805.

Reversed.

SECURED TRANSACTIONS — CLAIMS AGAINST ESTATES — SECURED CREDITORS — PRIORITY.

> The Estates and Protected Individuals Code (EPIC) precludes all proceedings to enforce a claim against an estate before the appointment of a personal representative except a proceeding brought by a secured creditor of the decedent to enforce the creditor's security; security interests are governed by article 9 of the Uniform Commercial Code, and no provision of EPIC requires a secured creditor that is otherwise entitled to exhaust a security to first bring a claim against the estate in order to be permitted to exhaust the security upon default, even though there will be insufficient funds in the estate to pay priority claims and allowances (MCL 440.9101 *et seq.*; MCL 700.3104, 700.3805, 700.3809).

*Morello Law Group, P.C.* (by *George S. Fekaris*), for Bridget A. Lundy.

*Mittelstaedt and McNeely, P.C.* (by *Christopher E. McNeely* and *Andrew M. White*), for First Federal Bank of the Midwest.

Before: DONOFRIO P.J., and CAVANAGH and FITZGERALD, JJ.

PER CURIAM. Respondent, First Federal Bank of the Midwest (the bank),[1] appeals as of right the probate court order granting the petition for return of estate funds filed by petitioner, Bridget A. Lundy, as personal representative of the estate of David Gary Lundy. This case arises from a dispute over the funds in a certificate of deposit (CD) account that belonged to the decedent. At issue is the interplay between the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, article 9 of the Uniform Commercial Code (UCC), MCL 440.9101 *et seq.*, and the terms of an "Assignment of Deposit Account" (the assignment agreement) be-

---

[1] First Federal Bank of the Midwest was formerly known as the Bank of Lenawee.

tween the bank and the decedent in determining whether a bank, as the holder of a perfected security interest in a CD account that a decedent pledged as collateral to secure a mortgage, is entitled upon default to retain the funds in the account even though there are insufficient funds in the estate to pay the priority claims and allowances set forth in MCL 700.3805 of EPIC. We reverse and remand.

### I. FACTS AND PROCEDURAL HISTORY

On December 22, 2005, the decedent personally guaranteed a mortgage and promissory note between Lundy's Lane, L.L.C.,[2] and the bank. On that date, the decedent and the bank also entered into the assignment agreement, which granted the bank a security interest in the CD account as collateral for the loan.[3] According to the terms of the assignment agreement, upon occurrence of an "Event of Default," the bank had the right to exercise one or more of the rights and remedies enumerated in the assignment agreement. Upon de-

---

[2] Lundy's Lane, L.L.C. is apparently a convenience store owned by the decedent, his son Gary A. Lundy, or both.

[3] The assignment agreement provided as follows:

ASSIGNMENT. For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" means the following described deposit account ("Account"):

CD Account in the name of David G. Lundy

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

fault, the rights and remedies provided in the assignment agreement allowed the bank to accelerate the indebtedness to make it immediately due and payable without notice. The assignment agreement also provided the bank the right to take all funds in the CD account and to apply the funds to the indebtedness. Any excess funds remaining after application of the CD account proceeds to the indebtedness would be paid to the decedent.

The decedent died testate on February 20, 2008. On April 24, 2008, Bridget A. Lundy applied for informal probate and for appointment of a personal representative. She was appointed personal representative of the estate on that same date.

The decedent defaulted on the loan,[4] and the bank exercised its rights under the assignment agreement. The bank liquidated the CD account and applied the funds to reduce the principal amount of the loan secured by the CD account.[5]

On May 19, 2008, petitioner filed a form selecting the CD account as the "homestead allowance authorized by

---

[4] The decedent defaulted on the loan by failing to make payments as they became due. Additionally, the terms of the assignment agreement identified "death" as an event of default.

[5] By letter dated April 30, 2008, addressed to Gary A. Lundy, the bank, through Vice President John Selenko, informed Lundy that the mortgage was in default and that the bank had exercised its rights under the assignment agreement and had liquidated the CD account and applied the funds to reduce the principal amount of the loan secured by the CD account. Selenko wrote in the letter that he had had "numerous conversations" with the decedent regarding the loans and that the decedent "had verbally agreed in February to allow the bank to liquidate his certificate of deposit to bring all of the loans current and pay down the principal balance of the real estate loan." Selenko claimed that the bank "held off liquidating" the account pending some negotiations concerning a lease of the store, which had apparently ceased with the decedent's death.

MCL 700.2402" and as the "exempt property authorized by MCL 700.2404." Fields for a family allowance were also completed on the form, as follows: "A family allowance of $23,000.00 per year has been determined as authorized by MCL 700.2403 and MCL 700.2405." On August 14, 2008, petition filed an inventory listing only "Claim on Proceeds of CD Held By First Federal Bank" and listing "[$]0.00" as the total value of the property.

Petitioner commenced this action with the filing of a "Petition for Return of Estate Funds" on January 9, 2009. She asserted that under MCL 700.3805 of EPIC, the bank's security interest in the CD account was of lower priority than the surviving spouse's claim for reimbursement of reasonable funeral expenses, the homestead allowance, the family allowance, and exempt property. In response, the bank asserted that because the bank had properly perfected its security interest in the CD account, the bank had an interest superior to any and all claims to the same collateral. Thus, the bank contended that it had properly applied the balance of the CD account to the obligation secured by the account pursuant to MCL 440.9607(1)(d) of the UCC.

At a hearing on the petition, the probate court acknowledged that the bank had a perfected security interest in the CD account. The court opined that the bank had the right to apply the balance of the CD account to the obligation secured by the account "prior to the death of the decedent, or, perhaps even prior to the spouse filing an affidavit for information Probate and being appointed personal representative." The court concluded, however, that EPIC superseded article 9 of the UCC once a personal representative was appointed. Thus, the court concluded that, under EPIC, "the surviving spouse has the right to claim homestead

and family allowance prior to a creditor's claim, and, that is what the bank had."

## II. STANDARD OF REVIEW

This Court reviews de novo issues of statutory interpretation as questions of law. *In re Clarence W Temple & Florence A Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). An appeal of a decision of the probate court, however, is on the record; it is not reviewed de novo. *Id.*; MCL 600.866(1); MCR 5.802(B)(1). This Court reviews the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion. *Temple*, 278 Mich App at 128.

## III. THE PURPOSES OF ARTICLE 9 OF THE UCC AND EPIC

Subject to several exceptions, article 9 of the UCC as enacted in Michigan governs, among other things, "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." MCL 440.9109(1)(a). It governs such things as perfection of security interests, MCL 440.9301 to MCL 440.9316, priority of security interests, MCL 440.9317 to MCL 440.9339, and rights of third parties, MCL 440.9401 to MCL 440.9409.

The purposes of EPIC include "[t]o discover and make effective a decedent's intent in distribution of the decedent's property" and "[t]o promote a speedy and efficient system for liquidating a decedent's estate and making distribution to the decedent's successors." MCL 700.1201(b) and (c). The provisions relevant to this case are within article III of EPIC, MCL 700.3101 *et seq.*, which governs probate of wills and estate administration.

IV. ARTICLE 9 OF THE UCC AND THE ASSIGNMENT AGREEMENT

The record reveals that the decedent and the bank voluntarily entered into a transaction and intentionally created a security interest in the CD account. Article 9 of the UCC provides the scheme by which security interests in personal property are regulated. *Shurlow v Bonthuis*, 456 Mich 730, 735; 576 NW2d 159 (1998). Specifically, MCL 440.9607(1) of the UCC provides:

> If so agreed, and in any event after default, a secured party may do 1 or more of the following:
>
> *   *   *
>
> (d) If it holds a security interest in a deposit account perfected by control under [MCL 440.9104(1)(a)],[6] apply the balance of the deposit account to the obligation secured by the deposit account.

Under this section, upon default the bank had a right to apply the balance of the CD account to the obligation secured by the CD account. The bank's action was permitted under the terms of the assignment agreement, which provided that the death of the borrower or grantor constituted an event of default. The assignment agreement provided several "Rights and Remedies on Default," including the right of the bank to "surrender the Account to the Issuer and obtain payment thereunder subject to any early withdrawal penalty imposed by the Issuer" and to "obtain all funds in the Account from the Issuer of the Account and apply them to the

---

[6] MCL 440.9104(1) provides:

A secured party has control of a deposit account if 1 or more of the following apply:

(a) The secured party is the bank with which the deposit account is maintained.

indebtedness in the same manner as if the Account had been issued by Lender." There is no dispute that the bank, in addition to being the "lender," was also the holder or issuer of the deposit account. The bank was entitled under article 9 of the UCC and the assignment agreement to apply the balance of the CD account to the obligation secured by the account (the mortgage) because the bank held the deposit account.

## V. EPIC

EPIC treats secured creditors differently than other potential claimants against an estate. MCL 700.3104 provides:

> (1) Except as otherwise provided in subsection (2), a proceeding to enforce a claim against a decedent's estate or the decedent's successors shall not be revived or commenced before the appointment of a personal representative. . . .
>
> (2) This act does not apply to a proceeding by a secured creditor of the decedent to enforce the creditor's security except as provided in part 8 of article III and part 6 of article VII.[7]

This provision precludes all proceedings to enforce a claim against the estate before the appointment of a personal representative except a proceeding brought by a secured creditor of the decedent to enforce the creditor's right to the creditor's security. EPIC does not apply to such claims except as provided in two specific parts of EPIC.[8] The comment to MCL 700.3104 by the reporter for the EPIC drafting committee of the State

---

[7] Part 8 of article III is found at MCL 700. 3801 through MCL 700.3815. Part 6 of article VII is found at MCL 700.7601 through MCL 700.7615.

[8] The provisions of part 8 of article III are relevant here and are discussed in this portion of the opinion; article VII pertains to trust administration and is not relevant here.

Bar of Michigan explains that this section "subjugates the rights of creditors to the provisions of EPIC, except for secured creditors, who may proceed against the secured property. Even for a secured creditor, the code governs any attempt to recover an amount in excess of the security." *Estates and Protected Individuals Code With Reporter's Commentary* (ICLE, 2008 ed), p 154 (*EPIC With Reporter's Commentary*). While not binding, such comments are often used to aid in the interpretation of a statute or rule. See *People v Clement*, 254 Mich App 387, 391-392; 657 NW2d 172 (2002); *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 585; 644 NW2d 54 (2002).

Secured creditors are also treated differently than other potential claimants, including other creditors, in part 8 of article III of the EPIC. MCL 700.3801(1) requires a notice "notifying estate creditors to present their claims within 4 months after the date of the notice's publication or be forever barred." MCL 700.3803 limits the time for presenting claims and bars claims against the estate unless presented within specified time limits. MCL 700.3803(3)(a), however, expressly exempts "[a] proceeding to enforce a mortgage, pledge, or other lien on estate property" from the time limitations. The reporter's supplemental comment for 2005 to MCL 700.3801 explains, in relevant part:

> While a secured creditor is known, frequently notice is not given to secured creditors because § 3803(3)(a), MCL 700.3803(3)(a), permits a secured creditor to collect its claim without regard to the shortened statute of limitations of § 3803, MCL 700.3803. *The secured creditor, however, has a priority position only as to the asset in which the security interest is held. If the security is inadequate, the creditor has no preference when trying to collect any deficiency.* Therefore, when there is uncertainty whether the security is sufficient to cover the secured creditor's claim,

the personal representative should give actual notice to the secured party. If no notice is given, the secured party may assert that the three-year statute of limitations of § 3803(1)(c), MCL 700.3803(1)(c), applies to a recovery of the deficiency. [*EPIC With Reporter's Commentary*, p 226 (emphasis added).]

Petitioner presumably disputes the emphasized portion of the commentary. Although petitioner concedes that the bank is a secured creditor, she asserts that the bank has *no* priority position, except as between the bank and a hypothetical second unsecured creditor, when the estate does not have sufficient funds to pay all claims and allowances. Petitioner relies primarily on MCL 700.3805 in support of this assertion. MCL 700.3805 sets forth the priority of claim payments. MCL 700.3805(1) provides:

If the applicable estate property is insufficient to pay all claims and allowances in full, the personal representative shall make payment in the following order of priority:

(a) Costs and expenses of administration.

(b) Reasonable funeral and burial expenses.

(c) Homestead allowance.

(d) Family allowance.

(e) Exempt property.

(f) Debts and taxes with priority under federal law, including, but not limited to, medical assistance payments that are subject to adjustment or recovery from an estate under section 1917 of the social security act, 42 USC 1396p.

(g) Reasonable and necessary medical and hospital expenses of the decedent's last illness, including a compensation of persons attending the decedent.

(h) Debts and taxes with priority under other laws of this state.

(i) All other claims.

MCL 700.3809, which governs secured claims, in addition to MCL 700.3801, reveals that petitioner's assertion is incorrect in part. That is, without even making a "claim" against the estate, the bank has a priority position with respect to the secured property. However, the bank is in the same position as other creditors with respect to any claim against the estate for the amount of any deficiency existing after exhausting the security. MCL 700.3809.[9] Like MCL 700.3805, MCL 700.3809 governs the obligations of the *personal representative* in paying *claims*. No provision requires a secured creditor that is otherwise entitled to exhaust a security to first bring a claim against the estate in order to be permitted to exhaust the security. Indeed, MCL 700.3809 contemplates that the secured creditor may exercise that option. Once again, the commentary is helpful:

> *If a secured creditor surrenders the security interest, he or she becomes a general creditor with priority equal to that of other general creditors to be paid for the full amount of the claim. If, instead, the secured creditor realizes against (collects from) the asset that secures the claim but is not*

---

[9] MCL 700.3809 provides:

A personal representative shall pay a secured claim on the basis of the amount allowed if the creditor surrenders the security. Otherwise, the personal representative shall pay on the basis of 1 of the following:

(a) *If the creditor exhausts the security before receiving payment, upon the amount of the claim allowed less the fair value of the security.*

(b) If the creditor does not have the right to exhaust the security *or has not done so,* upon the amount of the claim allowed less the value of the security determined by converting it into money according to the terms of the agreement under which the security was delivered to the creditor or by the creditor and personal representative by agreement, arbitration, compromise, or litigation. [Emphasis added.]

*fully paid, he or she becomes a general creditor to the extent of the deficiency.* If the secured creditor is given notice as required by §3801(2), MCL 700.3801(2), the secured creditor needs to file a contingent claim within the claims period to preserve his or her rights to collect any deficiency if the security is insufficient to pay the claim. If not given notice, the secured creditor is not barred by the short four-month statute of limitations. [Reporter's Supplemental Comment—2005 to MCL 700.3809, in *EPIC With Reporter's Commentary,* p 235 (emphasis added).]

The secured creditor's special position with respect to the secured property is also reflected in MCL 700.3812, which provides: "An execution shall not issue upon nor shall a levy be made against estate property under a judgment against a decedent or personal representative. *This section shall not be construed to prevent the enforcement of a mortgage, pledge, or lien upon property in an appropriate proceeding.*" (Emphasis added.) Finally, MCL 700.3814 allows the personal representative discretion in dealing with an encumbered estate asset, but in no way suggests that an encumbrance may be disregarded if the asset is needed to satisfy the priorities set forth in MCL 700.3805.[10] In sum, none of these provisions prevents the secured creditor from exhausting the security. On the contrary, they treat a secured creditor differently and contem-

---

[10] MCL 700.3814 provides:

    If property of the estate is encumbered by mortgage, pledge, lien, or other security interest and it appears to be in the estate's best interest, the personal representative may pay the encumbrance or a part of the encumbrance, renew or extend an obligation secured by the encumbrance, or convey or transfer the property to the creditor in satisfaction of the lien, in whole or in part, whether or not the encumbrance holder has presented a claim. Payment of an encumbrance does not increase the share of the distributee entitled to the encumbered property unless the distributee is entitled to exoneration.

plate a secured creditor's right to collect from the security without bringing a claim against the estate for estate funds.

Two states that have probate codes modeled after the Uniform Probate Code, like EPIC, have rendered decisions consistent with our analysis regarding the appropriate treatment of secured creditors under EPIC. In *In re Larson Estate*, 359 NW2d 281 (Minn App, 1984), the Minnesota Court of Appeals addressed the estate's argument that a bank improperly sought payment of its secured claim from the estate's assets rather than proceeding against the security. The court construed provisions of the Minnesota probate code that are similar to the provisions of EPIC relevant in this case:

> The probate code permits the personal representative authority to pay a secured claim in three ways. The personal representative may pay the claim in whole or in part; renew or extend the secured obligation; or convey or transfer assets to the creditor in satisfaction of the lien, whether or not the holder has filed a claim. Minn.Stat. § 524.3-814 (1982).
>
> For the secured creditor who seeks payment, the code provides three options. Minn.Stat. § 524.3-809. First, payment is to be made upon the basis of the amount allowed if the creditor surrenders his security. Second, if the creditor exhausts its security before receiving payment upon the amount owing, it may receive its credit less the fair value of the security. Finally, if the creditor does not have the right to exhaust its security, or has not done so, it may receive the amount of the claim allowed less the value of the security. Minn.Stat. § 524.3-809 provides options for the secured creditor, but does not interfere with the process set out in Minn.Stat. § 524.3-806. The Minnesota Supreme Court has addressed this question. In *Browning v. Eiken*, 189 Minn. 375, 249 N.W. 573 (1933), the court reviewed allowance of an intermediate account, where the probate

court approved the act of a bank in applying a part of a deposit account in payment of notes held by it against decedent. The court stated:

"The general rule is that a creditor holding securities has the option, after the debtor's death, to enforce his securities for payment of his claim or to file his claim as a general creditor of the estate." [*Larson,* 359 NW2d at 285-286, quoting *Browning,* 189 Minn at 380.][11]

The *Larson* court concluded that the bank had proceeded lawfully under the probate code. *Larson,* 359 NW2nd at 286; see also *Binder v Fruth,* 150 Ariz 21, 24; 721 P2d 679 (Ariz App, 1986) (considering provisions of the Arizona probate code modeled after the Uniform Probate Code and agreeing with the reasoning of the *Larson* court quoted here); 34 CJS, Executors and Administrators, § 555 ("A secured creditor generally need not present his or her claim for allowance to preserve a right to enforce the security, but presentation is generally required where recovery is sought out of the general assets of the estate.").

In *In re Stephenson Estate,* 217 Ariz 284; 173 P3d 448 (Ariz App, 2007), the Arizona Court of Appeals considered whether a secured creditor must seek permission from the court or from the personal representative before conducting a trustee's sale of property secured by a deed of trust. The court noted several ways in which the Arizona probate code treats secured creditors differently than other claimants. *Id.* at 286-287 (discussing the Arizona statute similar to MCL 700.3104, MCL 700.3803, MCL 700.3812, and MCL 700.3809). It rejected the argument "that the sale of encumbered estate property is subject to court supervision, and

---

[11] The provisions of the Minnesota probate code cited are similar to MCL 700.3814 (encumbered assets), MCL 700.3809 (secured claims), MCL 700.3806 (allowance and disallowance of claims), respectively.

[that] the proceeds of the sale must be distributed pursuant to the priorities specified in" the Arizona analogue of MCL 700.3805. *Stephenson*, 217 Ariz at 288-289. It noted the secured creditor's right under *Binder* to choose its remedy. *Id.* at 288. After noting that the appellee (representing the estate) had cited no "authority to support its position that the proceeds of the trustee's sale can be distributed to pay for other expenses of the decedent debtor to the detriment of the secured creditor," the court rejected the appellee's argument that Ariz Rev Stat 14-3805 (analogous to MCL 700.3805) protects the rights of secured creditors. *Id.* First, the court noted that Ariz Rev Stat 14-3805 does not distinguish between secured claims and other debts and does not even mention secured creditors. Second, it explained that Ariz Rev Stat 14-3805 "governs the priority of 'claims,' " but "[a] secured creditor can enforce its security and need not file a claim." *Id.*, citing the Arizona statute comparable to MCL 700.3803. The *Stephenson* court concluded that Ariz Rev Stat 14-3805 "has no applicability to a secured creditor that chooses to execute on its security rather than file a claim." *Id.*

Both *Larson* and *Stephenson*, which interpreted the rights and remedies of secured creditors under statutory schemes very similar to EPIC, lend support to our conclusion that the bank was entitled to exhaust the funds in the CD account.

Finally, there is a dispute between the parties over whether the deposit account ever became estate property.[12] We need not determine whether the CD account was ever technically estate property because the bank

---

[12] Under EPIC, " '[p]roperty' means anything that may be the subject of ownership, and includes both real and personal property or an interest in real or personal property." MCL 700.1106(u). At the relevant time, MCL 700.1104(b) provided that

was entitled to exhaust the funds in the account without making a claim on the estate.

Reversed and remanded. Jurisdiction is not retained.

---

"[e]state" includes the property of the decedent, trust, or other person whose affairs are subject to this act as the property is originally constituted and as it exists throughout administration. Estate also includes the rights described in [MCL 700.3805, 700.3922, and 700.7502] to collect from others the amounts necessary to pay claims, allowances, and taxes.