# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of STUART ALISTER WARNER.

---

TAMARA WARNER,

      Appellee,

v

BRAD TREVOR WARNER,

      Appellant.

UNPUBLISHED
December 8, 2015

No.  323664
Calhoun Probate Court
LC No.  2013-000548-DA

---

Before:  SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

Brad Trevor Warner, a child of decedent Stuart Alister Warner, appeals as of right the probate court's order denying his petition to remove Stuart's surviving spouse, Tamara Warner, as personal representative of Stuart's estate and denying his request to disallow her selection of spousal homestead and exempt property allowances.  We affirm.

## I.  FACTUAL BACKGROUND

Stuart died on June 1, 2013, of a myocardial infarction caused by hypertension and hyperlipidemia.  His surviving spouse, Tamara, petitioned for appointment as his personal representative.  In her application, Tamara indicated that Stuart died without a will.  Tamara identified Stuart's children, Brad Warner, Brian Warner, and Brooke Barksdale, as heirs.  Brad, Brian, and Brooke are not Tamara's children, and the record reflects that friction exists within the family.

The probate court appointed Tamara as personal representative of the estate.  Tamara stated that Stuart's assets were valued at $150,604, including a home, two cars, a bank account, and personal property.  Tamara sought spousal elections.  In September 2013, Brad filed several petitions, including petitions to remove Tamara as personal representative and to disallow her spousal elections.  Brad alleged that Tamara had misrepresented that Stuart did not have a will.  According to affidavits of Stuart's children, Stuart did have a will, but after his death, it was missing from the gun safe where he had kept it.  Brad also contended that Tamara was an

-1-

alcoholic and refused to communicate with Stuart's adult children. He stated that supervision of the estate was necessary to protect the children's interests.

Tamara responded that Stuart did not have a will at the time of his death, and she denied possessing any personal property of the children or Stuart's mother, Martha Warner. Tamara stated that she directed Stuart's children to communicate with her through her attorney because the children's requests were overwhelming and harassing. She also denied drinking excessively.

The probate court stayed proceedings and the disbursement of the estate. It appointed counsel to represent Brooke, who was at that time serving abroad in the United States military. After a hearing, the probate court granted Brad's motion for a jury trial regarding the lost will, but it denied Brad's petition to suspend Tamara as personal representative and allowed Tamara's spousal allowances.

## II. JURISDICTION AND STANDARDS OF REVIEW

As an initial matter, Tamara contends that this Court does not have jurisdiction to hear Brad's appeal as an appeal of right. We disagree.

We review de novo whether this Court has subject-matter jurisdiction to hear an appeal. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). This Court has jurisdiction over appeals from orders that deny the removal of a personal representative, MCR 5.801(B)(2)(a), or that "determin[e] special allowances in a decedent's estate such as a homestead allowance, an exempt property allowance, or a family allowance," MCR 5.801(B)(2)(*l*). The order in this case both denied Brad's request to remove Tamara as a personal representative and determined special allowances. Therefore, we conclude that this Court has jurisdiction to hear this appeal as an appeal of right.

This Court reviews the probate court's factual findings supporting the grant or denial of an allowance for clear error. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). The trial court clearly errs when, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). We review for an abuse of discretion the probate court's ultimate determination of spousal allowances, *Lundy Estate*, 291 Mich App at 352, and the probate court's decision about whether to remove a personal representative, *In re Duane V Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007). The probate court abuses its discretion when its outcome falls outside the principled range of outcomes. *Id*. We review de novo issues of statutory interpretation. *Lundy Estate*, 291 Mich App at 352.

## III. REMOVAL OF PERSONAL REPRESENTATIVE

Brad contends that the probate court abused its discretion when it denied his petition to remove Tamara as personal representative. We disagree.

A surviving spouse has priority in appointment as an estate's personal representative. MCL 700.3203. However, an interested person may petition for replacement of a personal representative under several circumstances:

(a) Removal is in the best interests of the estate.

(b) It is shown that the personal representative or the person who sought the personal representative's appointment intentionally misrepresented material facts in a proceeding leading to the appointment.

(c) The personal representative did any of the following:

(*i*) Disregarded a court order.

(*ii*) Became incapable of discharging the duties of office.

(*iii*) Mismanaged the estate.

(*iv*) Failed to perform a duty pertaining to the office.  [MCL 700.3611.]

The probate court may appoint a special personal representative if (1) it is necessary to protect the estate before the appointment of a general personal representative, or if an appointment is terminated, (2) appointment is necessary to preserve the estate or secure its proper administration, or (3) a special personal representative is necessary to supervise the disposition of the decedent's body.  MCL 700.3614.

First, Brad argues that the probate court erred by failing to hold an evidentiary hearing on the contested facts.  A court has discretion to determine whether an evidentiary hearing is necessary.  See *Parks v Parks*, 304 Mich App 232, 239-240; 850 NW2d 595 (2014).  The purpose of an evidentiary hearing is to assist the court in making an informed decision on a factually disputed issue.  *Id.*  In this case, the probate court determined that it did not need to hold an evidentiary hearing because, even assuming that Brad's allegations were true, supervised administration of the estate was sufficient to address the family's concerns.  We conclude that the probate court's decision not to hold an evidentiary hearing fell within the range of principled outcomes.

Second, Brad contends that the probate court's decision not to remove Tamara constituted an abuse of discretion because Tamara is an alcoholic who is not qualified to act as personal representative, acted against the family's best interests, and misrepresented material facts.  Presuming without deciding, as the probate court did, that these allegations are true, we conclude that the probate court did not abuse its discretion.

It is clear from the record that the probate court considered the totality of the circumstances.  There is no other immediate family member able to act as personal representative—Brad is incarcerated, Brian resides out of the state, and Brooke is stationed in Germany.  An appointed special representative would require compensation from the estate, and the estate does not have significant assets.  Even if Tamara is as irresponsible as Brad alleges, she has the assistance of an attorney to help manage the estate and discharge the duties of her office.  Finally, and importantly, the probate court ordered supervised administration of the estate and a trial on the issue of the missing will.  These measures were reasonable to address the family's concerns.

-3-

We conclude that the probate court's decision not to remove and replace Tamara fell within the range of principled outcomes.

## IV. SPOUSAL ELECTIONS

Brad contends that the probate court should have disallowed Tamara's spousal homestead and exempt property allowances because the property may have been specifically devised under the missing will and because Tamara should not be allowed to profit from a fraud on the estate.

A decedent's surviving spouse is entitled to "household furniture, automobiles, furnishings, appliances, and personal effects from the estate up to a value not to exceed $10,000.00 more than the amount of any security interests to which the property is subject." MCL 700.2404. The surviving spouse is also entitled to "a homestead allowance of $15,000.00, adjusted as provided in [MCL 700.1210]." MCL 700.2402. The homestead allowance is "exempt from and has priority over all claims against the estate, except administration costs and expenses and reasonable funeral and burial expenses." MCL 700.2402. "A homestead allowance is *in addition to* any share passing to the surviving spouse . . . by the will of the decedent, unless otherwise provided, by intestate succession, or by elective share." MCL 700.2402 (emphasis added).

This Court has recently decided that an individual's power to devise property in a will is subject to the surviving spouse's rights to homestead and exempt property allowances. MCL 700.3101; *In re Jajuga Estate*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 5. "MCL 700.3101 expressly provides that a decedent's devises are *subject to* exempt property, which clearly indicates that a decedent's intended distribution of estate property is limited by the provisions of the exempt property statute." *Id*. at ___; slip op at 5. Thus, even if there was no inheritance provided for Tamara in the will, or even if Tamara was expressly *disinherited* from the will, she would still be entitled to an exempt property election. The same reasoning applies to Tamara's right to a homestead allowance, which MCL 700.3101 discusses in tandem with the exempt property allowance. We conclude that the probate court's decision to allow Tamara to take spousal allowances did not fall outside the range of principled outcomes.

Next, Brad contends that the probate court erred by declining to order an appraisal of Stuart's personal property at the expense of the estate. On her assessment, Tamara listed Stuart's assets as follows: a house in Battle Creek worth $128,300 and with a lien of $25,350; a 2010 Lincoln MKS worth $18,000; a 1996 Chevy Blazer worth $1,800; a credit union account worth $1,804; and household furniture and personal effects worth $1,000. Brooke, Brian, and Brad contested this, contending that Stuart's property also consisted of a riding lawn mower, leaf blower, flat-screen television, digital camera, personal computer, jewelry that included gold rings and necklaces, golf clubs, stereo speakers, and guns that were likely worth more than $1,000.

The probate court declined to have the decedent's personal property appraised. It found that even including values for the allegedly missing personal property in the inventory, a reasonable estimate had a value significantly under the exempt property allowance of $14,000 and the homestead allowance of $21,000.

We conclude that the probate court's decision fell within the range of principled outcomes. As a matter of mathematics, Tamara would be entitled to $35,000 in allowances. Less the value of the automobiles,[1] she is entitled to an additional $15,200. As the probate court noted, the personal property consisted of used household items and furnishings. It was unlikely that the aggregate value of the used household items would exceed $15,200. We conclude that the probate court did clearly err when it found that the value of the items in the home would be below Tamara's spousal allowances, and it did not abuse its discretion by determining that an appraisal would be an unnecessary expense to the estate under those circumstances.

Finally, Brad contends that Tamara has committed fraud by falsely stating that Stuart did not have a will. This issue depends on the resolution of factual questions—whether there was actually a missing will and whether Tamara destroyed it—that will be resolved by a jury. See *In re Flurry Estate*, 218 Mich App 211, 215-216; 554 NW2d 39 (1996) (discussing evidence necessary for a jury to find from oral testimony that a missing document was a will). We conclude that it would be premature for this Court to resolve this issue at this time.

We affirm.

/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Kurtis T. Wilder

---

[1] The values of the automobiles were derived from the Kelley Blue Book.