# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of PAULINE ROACH.

---

NORBERT ELWOOD GLOVER, Personal
Representative of the Estate of PAULINE
ROACH,

         Appellee,

v

RAVON WILSON,

         Appellant.

UNPUBLISHED
November 28, 2017

No. 333669
Washtenaw Probate Court
LC No. 15-000479-DE

---

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

Following a bench trial on petitioner Ravon Wilson's petition to set aside the last will of Pauline Roach (the decedent), the probate court found that Wilson had not "met her burden of establishing lack of testamentary intent or capacity, undue influence, fraud, mistake, duress, or revocation." Wilson appeals as of right. We affirm.

Wilson is the granddaughter of the decedent, and respondent Norbert Elwood Glover is the decedent's brother and the personal representative of her estate. The decedent died on April 12, 2015, and under the terms of her will, Glover was bequeathed all of decedent's personal property, subject to any distribution list that the decedent might leave behind, a 25% interest in her real estate, and the entire residue of the estate. Two grandsons and a sister of the decedent were each given a 25% interest in the decedent's real estate. Nothing was devised to Wilson.

Glover testified that after the decedent's only child, Wilson's father, died in 2013, the decedent initiated a conversation with Glover about wishing to redo her existing will ahead of an upcoming surgery. According to Glover, the decedent made her own arrangements with attorney William Winters, who came to the decedent's house to meet regarding the will. Glover testified that he was at the decedent's home visiting when Winters arrived, as Glover frequently stopped by to see the decedent, but Glover left at Winters' request. At a later date, according to Glover, he took the decedent to Winters' office for the signing of the new will; however, Glover remained in the lobby during the execution of the will. The will called for the distribution of the decedent's estate as outlined above, and it also appointed Glover as the personal representative.

-1-

Upon decedent's death in April 2015, Glover filed a petition for probate and appointment of a personal representative, along with other probate documents. The petition, while identifying the decedent's two grandsons, sister, and Glover as interested parties, failed to identify Wilson. Glover also failed to identify Wilson as a grandchild of the decedent in the "testimony [of] interested persons" document, which contained the names of the two grandsons, and which required identification of all the children of the decedent's children. No notices were sent to Wilson, who was a minor. In June 2015, the probate court entered an order, admitting the will to probate, determining the decedent's heirs to be her sister, her two grandsons, and Glover, and appointing Glover as personal representative. Letters of authority were issued for Glover, and in August 2015, Glover filed an inventory.

On September 3, 2015, Wilson filed a petition to set aside the will, to remove Glover as personal representative, and to request supervised administration of the estate. Wilson alleged that Glover made false representations in the previously-filed probate documents, given the omissions regarding Wilson's identity and existence. Wilson further alleged that the will should be set aside on the basis of undue influence exerted by Glover over the decedent, fraud and misrepresentations by Glover, duress, mistake, and the decedent's lack of the requisite mental capacity to make a will. Wilson asserted that there was undue influence because Glover was in a fiduciary, confidential relationship with the decedent when she executed the will, given the existence of a durable power of attorney held by Glover relative to the decedent's affairs, Glover had the opportunity to influence the decedent, and because Glover benefited from the will. In Glover's response to Wilson's petition, he denied that there was any legal basis to set aside the will, but he did acknowledge that a mistake had been made in not identifying Wilson in the probate documents that he filed, which mistake was being corrected by the filing of amended documents.

Following the denial of a motion for summary disposition filed by Glover, a one-day bench trial was conducted on Wilson's petition. At the conclusion of the trial, the probate court found that the decedent had been a tough woman who could hold her own, was more than capable of expressing herself, had strong convictions, and was not susceptible to the influences of others, including Glover. The court determined that, even accepting that Glover had been in a fiduciary relationship with the decedent, Wilson failed to show that the decedent was unduly influenced by Glover for purposes of distribution decisions in her will. As stated from the bench and enshrined in an order, the probate court ruled that Wilson had not "met her burden of establishing lack of testamentary intent or capacity, undue influence, fraud, mistake, duress, or revocation."

On appeal, Wilson argues that the probate court erred in finding inadequate evidence showing that the decedent had been unduly influenced by Glover; Wilson does not resurrect her arguments made below regarding fraud, misrepresentations, duress, mistake, and lack of the requisite mental capacity to make a will, so those matters will not be entertained by this panel.

We review a decision of the probate court on the record. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). "This Court reviews the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion." *Id.* "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *Christiansen v*

*Gerrish Twp*, 239 Mich App 380, 387; 608 NW2d 83 (2000) (quotation marks omitted).  A trial court abuses its discretion when it selects an outcome that falls outside the range of principled outcomes.  *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).  Further, this Court "will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Duke Estate*, 312 Mich App 574, 581; 887 NW2d 1 (2015) (quotation marks omitted).

"A contestant of a will has the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation."  MCL 700.3407(1)(c).  In *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 699-701; 880 NW2d 269 (2015), this Court observed:

> The party alleging undue influence in the execution of a testamentary instrument must present evidence that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Proof of motive, opportunity, or even the ability to control the grantor is not sufficient to establish undue influence in the absence of affirmative proof that it was exercised.
>
> * * *
>
> A presumption of undue influence exists when evidence establishes (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) that the fiduciary or an interest represented by the fiduciary benefits from a transaction, and (3) that the fiduciary had an opportunity to influence the grantor's decision in the transaction. Even when the presumption arises, the ultimate burden of proving undue influence remains on the party alleging that it occurred. But the presumption satisfies the burden of persuasion, so if a party opposing the allegation of undue influence fails to offer sufficient rebuttal evidence, then the party alleging undue influence will have met its burden of persuasion, i.e., its burden of showing the occurrence of undue influence. Generally, the fact-finder must assess whether sufficient evidence has been presented to rebut a presumption of undue influence. [Citations and quotation marks omitted.]

Here, a presumption of undue influence arose.  A fiduciary relationship existed between the decedent and Glover, given that Glover could act on the decedent's behalf under a durable power of attorney.  Further, Glover benefited from the will.  Finally, Glover had the opportunity to influence the decedent's decisions regarding her will because he regularly visited her, was at the decedent's house when she met with attorney Winters, and drove her to Winters' office to sign the will.  However, Glover offered sufficient evidence to rebut the presumption of undue influence.  Glover testified that he did not attempt to influence the decedent concerning the distribution of her estate, and Winters testified that he did not observe anything that would have led him to believe that Glover was improperly influencing the decedent.  Winters described the decedent as a strong, opinionated, and tough African-American woman who had been a union

organizer, and Winters had no doubt that her will reflected intentional choices made of her own free will. One of the decedent's grandsons testified in similar fashion regarding the demeanor and strength of his grandmother. Further, Glover testified that the decedent had indicated that she was giving him various assets so that Glover himself could distribute them to her family members. Attorney Winters had not been concerned that the decedent wanted Glover to receive so many of the assets.[1]

The testimony by Glover and Winters also reflected that the decedent had informed each of them of the reason for excluding Wilson from her will – the decedent understood that Wilson had received or was receiving Social Security benefits, a lump sum payment from Ford Motor Company, apparently pension related, and insurance proceeds as a result of the death of Wilson's father (the decedent's only child), leading the decedent to believe that she would be well taken care of in the future.[2] Glover denied that he had told the decedent about Wilson's receipt of the various benefits following her father's death, and Glover had no idea who provided the decedent with that information. Glover testified that he personally had no desire for the decedent to exclude Wilson under the will. During Wilson's brief testimony, she made no mention whatsoever of any Social Security, Ford-related, or insurance proceeds.

Accordingly, there was substantial evidence rebutting the presumption of undue influence, and Wilson presented little to no evidence establishing that Glover had unduly influenced the decedent. In her appellate brief, Wilson argues that Glover was "[t]he most likely source" of the information obtained by the decedent regarding benefits that Wilson received upon her father's death.[3] There is no evidence in the record supporting this claim, and Glover denied such involvement or communications; we defer to the probate court's assessment of Glover's credibility. *Duke Estate*, 312 Mich App at 581. Moreover, Wilson did not provide any evidence indicating that she had not received the death-related benefits; therefore, assuming that Glover shared the information with the decedent, we do not see how Glover's presumed dissemination of the information, unchallenged as to its accuracy, amounted to undue influence. Wilson also contends that Glover should have communicated to the decedent that the grandsons had also received benefits tied to their father's death and that Wilson would no longer receive

---

[1] We note that, on the basis of the inventory and the values attributed therein to the estate's assets, the most valuable asset by far was the decedent's home, which was split four ways. As to the entirety of the estate, Glover received assets amounting to $59,950 in value, while the two grandsons and sister each received $52,450, representing their shares of the house. Part of Glover's share included personal property, and he testified that he distributed numerous items of personal property to various family members as previously directed by the decedent in conversations with Glover.

[2] Glover explained that the two grandsons, Wilson's older siblings, had also received various benefits tied to their father's death, but they ended up using some of the proceeds to pay his funeral costs, while Wilson did not because she was a minor.

[3] Wilson claims in her brief that she receives Social Security benefits only because she is a minor and that those payments will soon stop.

Social Security benefits when she turns 18 years of age in 2018. First, there is no evidence that the decedent was unaware of these matters when she executed the will. Second, Glover specifically testified, absent evidence to the contrary, that the decedent knew that the grandsons had received benefits related to their father's death. And any silence by Glover regarding the Social Security benefits halting in the future simply did not amount to undue influence, assuming Glover's knowledge and the decedent's lack of knowledge on the subject.

There is simply no basis to reverse the probate court's ruling, as there were no errors in the court's factual findings, clear or otherwise, and its dispositional ruling did not constitute an abuse of discretion.

Affirmed. Having fully prevailed on appeal, the estate is awarded taxable costs under MCR 7.219.

/s/ Peter D. O'Connell
/s/ William B. Murphy
/s/ Kirsten Frank Kelly