*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ESTATE OF NATHALIE I. SOCHA.

BRUCE R. SOCHA,

       Appellant,

v

ROBYN CAMPEAU, PAM NEWMAN, and DAWN BOGNER,

       Appellees.

UNPUBLISHED
May 12, 2026
11:31 AM

No. 373895
Cheboygan Probate Court
LC No. 24-015731-DE

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this estate action, Bruce R. Socha, *in propria persona*, appeals as of right the probate court's order granting in part and denying in part his claims against the Estate of Nathalie I. Socha. We affirm.

## I. BACKGROUND

Nathalie passed away on December 24, 2023, and was survived by four children—Bruce, and also Dawn Bogner, Robyn Campeau, and Pam Newman (collectively, appellees). Bruce applied for informal probate of Nathalie's will and was appointed personal representative of the estate. He subsequently filed two claims against the estate—one for compensation related to care services provided to Nathalie before her death in the sum of $120,302.40, and one for labor related to the installation of two decks on Nathalie's property in the amount of $7,500. To the first claim, Bruce attached a log of hours with dates and pay rates, and stated, "I have been paid in full through February 19th, 2022. Arrears starting February 21th [sic] 2022 until her death on December 24, 2023."

Newman and Campeau, through counsel, filed separate objections to the claims. Newman asserted that she was unaware of any contract between Bruce and Nathalie related to the claims,

the back deck remained unfinished, Bruce had been living rent free with Nathalie since October 2016, and Bruce had already been compensated. Campeau asserted that shortly after Nathalie's death, Bruce said he had already been compensated, and that Bruce's claim was just a ploy to get Nathalie's home, as the amount claimed equaled the value of the home.

Over two days, the probate court held an evidentiary hearing (during which Bruce was represented by counsel) regarding the claims, and ultimately granted in part and denied in part Bruce's claims against the estate. Specifically, the court found, on the basis of the proofs, that Nathalie and Bruce did have an agreement for Bruce to provide care, but that none of the evidence presented unambiguously established the terms of the agreement related to hours and pay rate. Acknowledging the presumption of gratuity when care is provided by a family member, the court found $16.20 an hour at 40 hours per week to be reasonable compensation for the care Bruce provided. The court then proffered that two years of care at that rate equaled $67,392, but subtracted $59,720 (the compensation Bruce had already been paid) to award Bruce $7,672 for his first claim against the estate. In turn, the court denied Bruce's claim for compensation related to the installation of the decks, again acknowledging the presumption of gratuity and reasoning, "The decks were built six years prior to [Nathalie's] death and if she had wanted to pay him labor for the decks, it would have been paid prior to her death."

## II. ANALYSIS

### A. COMPENSATION FOR CARE OF NATHALIE

Bruce first argues on appeal that the probate court erred by basing its compensation award on a general 40-hour workweek, because he provided Nathalie 24-hour care during the time for which he claimed compensation against the estate. We review an appeal of a probate court's decision on the record, rather than de novo. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011), citing MCL 600.866(1), and MCR 5.802(B)(1). Thus, we review "the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion." *In re Lundy Estate*, 291 Mich App at 352. "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes," or "when it makes an error of law." *In re Hernandez Supplemental Needs Trust*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366172); slip op at 8 (quotation marks and citations omitted). "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017) (quotation marks and citations omitted).

Bruce has not established that the trial court abused its discretion in awarding him only partial compensation, because the record and applicable law support the probate court's ruling. As the court acknowledged,

> A presumption of gratuity arises where the plaintiff is related by blood or marriage to the decedent . . . . Where a presumption of gratuity arises, the plaintiff may still recover for services rendered under the theory of contract implied in fact. A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor. The issue is a question of fact to be resolved through the consideration of all the

circumstances, including the type of services rendered, the duration of the services, the closeness of the relationship of the parties, and the express expectations of the parties. [*In re Lewis*, 168 Mich App 70, 74-75; 423 NW2d 600 (1988) (quotation marks and citations omitted).]

The probate court found, consistent with Bruce's testimony and argument at the evidentiary hearing, that although Bruce and Nathalie did not have a written agreement to compensate Bruce for the care services he provided, they did have an oral agreement. As the court reasoned, Bruce, who had power of attorney over Nathalie's finances and healthcare decisions beginning in 2017, testified that he began helping care for Nathalie after a fall she had in 2016, and that he started receiving compensation for that care from Nathalie in 2020. According to Bruce, although they did not reduce the terms to writing, he and Nathalie had conversations about compensation in exchange for care, and she wanted him to be paid. Indeed, he began paying himself[1] from Nathalie's funds in 2020, and drafted a ledger for the proceedings showing the hours he allegedly worked each week in 2022 and 2023, the amount he was paid, and the amount Nathalie allegedly owed according to their agreement. Eventually, as Nathalie required increased care following a stroke and the beginning of hospice care, he could only make partial payments to himself from Nathalie's accounts because, according to Bruce, there was not enough money for full payment.

Bruce testified further that he and Nathalie agreed to compensation in 2020 at a starting rate of $16.20 per hour because he quit his job at Prairie Farms where he had been receiving that same pay. And he provided the care she needed because Nathalie did not want to go to a nursing home.

Bogner testified that she did witness one discussion between Bruce and Nathalie in 2020 regarding an agreement for him to quit his job so that he could care for her. She also read from a document she had originally planned to submit to the court, but ultimately declined to[2], stating:

> I was a witness to the verbal agreement between my mother and brother regarding compensation regarding her long-term care. My mother did not want multiple caregivers. This was tried, and she was not happy with it, and she did not want to go to a nursing home. She wanted to remain in the home. She specifically stated that she wanted my brother to leave his job and be her caretaker.

From this evidence, the probate court reasonably concluded that a verbal compensation agreement existed between Bruce and Nathalie. However, the evidence also supports the court's determination that the exact terms of that agreement were "murky," as well as the court's ultimate award on the claim.

---

[1] Bruce testified that because he had power of attorney over Nathalie's finances, he had the authority to write checks on her behalf.

[2] Bogner testified that she initially wrote the letter because she thought Bruce had not been provided any compensation for his care services, but that she later found he had already been compensated.

Bruce asserts specifically that because the court found that he essentially provided Nathalie 24-hour care during the time period related to his claim, the court's decision to compensate him for only 40 hours per week constitutes a "clear and demonstrable error that contradicts the Courts [sic] own record." While the court did acknowledge that Bruce was essentially on call at all times for Nathalie's care,[3] its decision to award compensation for only 40 hours per week was reasonable and supported by the record. The record demonstrates that Bruce had lived in Nathalie's home rent-free since 2016, well before the alleged compensation agreement in 2020, and that he never paid rent or utility bills. Bruce also stated that he cared for Nathalie in a number of ways, including helping her transfer to bed and use the bathroom. Further, the list of essential duties in his claim included assistance with ambulation, personal grooming, medication administration, and preparation of meals.

From the evidence above, and in light of the presumption of gratuity, *In re Lewis*, 168 Mich App at 74-75, the trial court's award of compensation for 40 hours per week, rather than the 112 hours per week claimed, was reasonable. In exchange for providing care, Bruce enjoyed free room and board, and despite the on-call nature of the care, from the responsibilities listed, it is highly unlikely Bruce was actually working, i.e., carrying out those responsibilities, for 112 hours each week, which equates to 16 hours per day. Nor would it be likely that Nathalie would have agreed to pay Bruce more than she financially could have. Accordingly, the probate court did not abuse its discretion by basing its compensation award on a 40-hour workweek.

Bruce also asserts that he was a live-in domestic caregiver under the Fair Labor Standards Act (FLSA), 29 USC 201 *et seq*., and entitled to compensation for 16-hour days under 29 CFR 785.15. As we do not see where Bruce raised this argument below, it is waived. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023). Regardless, even if the minimum wage requirements of the FLSA applied to Bruce's care for Nathalie, this is an action involving a claim against the estate related to an oral compensation agreement with Nathalie, not a suit for wages under FLSA.

## B. REIMBURSEMENT FOR LABOR

Bruce's second argument on appeal is that the probate court erred by denying his claim for the labor he put into installation of the decks on Nathalie's property. In doing so, Bruce asserts that the court erred by basing its decision on the presumption of gratuity rather than a contract implied in fact. But the presumption of gratuity applies to Bruce's installation of the decks, *In re*

---

[3] The court stated on the record:

And you know, I don't think 40 hours is unreasonable. That's a pretty significant task to take care of somebody each and every day, make sure they're taken care of. I mean, there's -- are they actually physically doing 40 hours a week? Perhaps not. But even when you're not working there are times when you have to tend to the needs, or you're just sort of on call within your own home. You know, the ability to go out . . . I mean those things are somewhat eliminated or restricted because the responsibilities. . . . So I think a 40 hour week to provide 24/7, 365 for almost two-year in home care is, I don't think it's unreasonable.

*Lewis*, 168 Mich App at 74-75, and the record supports the court's denial of the claim. Consistent with the court's findings, the decks portrayed in the pictures offered by Bruce and admitted into evidence at the evidentiary hearing do not appear as if they should have taken 300 hours over three years to build, as Bruce asserts, and Bruce began construction on the decks in 2018. Thus, it was likely that if Nathalie had agreed to pay Bruce for the labor, she would have done so much earlier. Moreover, Terry Campeau, Robyn's husband, testified that the decks were unfinished in 2022 when he visited the home, and Newman testified that the decks were not handicap accessible and boards were loose. Accordingly, the probate court's decision to deny Bruce's claim for compensation related to installation of the decks was reasonable and, therefore, did not amount to an abuse of discretion. *In re Hernandez Supplemental Needs Trust*, ___ Mich App at ___; slip op at 8.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

-5-